**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

STEPHEN BURDA                    NO. 4:11-CV-0500

v.                               JUDGE CONNER

COMMONWEALTH OF                  MAGISTRATE JUDGE METHVIN
   PENNSYLVANIA DEPARTMENT
   OF CORRECTIONS
DAVID VARANO
ROBERT MCMILLAN
RHONDA M. ELLETT

**REPORT AND RECOMMENDATION**
**ON MOTION FOR SUMMARY JUDGMENT**
**AND MOTION TO STRIKE**
(**Docs. 18**, **40**)

This is an employment discrimination action filed by plaintiff, Stephen

Burda, on March 18, 2011. (Doc. 1). Plaintiff has withdrawn Counts II and VII

which were conspiracy counts under 42 U.S.C. §§ 1981 and 1983.[1] Plaintiff's

remaining counts are as follows:

> Count I:    Violations of the First, Fourth and Fourteenth Amendments
>             pursuant to §§ 1981 and 1983 (false accusation of making
>             discriminatory comments to a female Corrections Officer, and
>             retaliation).
>
> Count III:  Gender discrimination under Title VII
>
> Count IV:   Age discrimination under the ADEA

_____

[1] Defendants' brief in support of their motion for summary judgment addressed Burda's
conspiracy claims (Counts II, VII), but plaintiff has indicated that he is not pursuing such
claims. (*See* Doc. 39, p. 25).

Count V:      Retaliation under Title VII and the ADEA

Count VI:     Hostile work environment under Title VII and the ADEA

Count VIII:   Age and gender discrimination under the PHRA

Named as defendants are Burda's former employer, Commonwealth of Pennsylvania Department of Corrections; David Varano, Superintendent of SCI-Coal Township; and Robert McMillan and Rhonda M. Ellett, Deputy Superintendents at SCI-Coal Township.

Before the court is the defendants' motion for summary judgment[2] and motion to strike.[3] The motions have been referred to the undersigned for a report and recommendation, and are now ripe for disposition.[4]

---

[2] Defendants filed a motion for summary judgment (Doc. 18); a statement of material facts (Doc. 17); exhibits in support of their motion (Docs. 21–27, 29); and a supporting brief (Doc. 30). Burda filed a brief in opposition to the motion (Doc. 39) and a counter-statement of material facts (Doc. 39-1). Defendants filed a reply brief (Doc. 42), to which Burda filed a sur-reply brief on July 2, 2012. (Doc. 47).

[3] Defendants filed a motion to strike (Doc. 40) and a supporting brief (Doc. 41) on May 17, 2012. The motion seeks to strike portions of Burda's counter-statement of material facts for failure to comply with Fed. R. Civ. P. 56 ad M.D. Pa. L.R. 56.1. Burda filed a brief in opposition to this motion on June 18, 2012. (Doc. 44).

[4] On September 26, 2012, Judge Conner referred the pending motions to undersigned. (Doc. 48).

**FINDINGS AND RECOMMENDATIONS**

## I. Background

As an initial matter, defendants seek to strike certain paragraphs of Burda's counter-statement of material facts as non-responsive, argumentative, lacking a basis in personal knowledge or otherwise failing to comply with Fed. R. Civ. P 56 and M.D.Pa. L.R. 56.1. Specifically, Local Rule 56.1 provides, *inter alia*:

> A motion for summary judgment filed pursuant to Fed.R.Civ.P. 56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried.
>
> The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried.
>
> Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements.
>
> All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

LR 56.1.

Burda's responses to paragraphs 18–83 were identical: "Denied as immaterial. This was contained within the first termination. The reversal is res

judicata and collateral estoppel." (*See* Doc. 39-1). Moreover, only six (6) of the 133

paragraphs of Burda's counter-statement of material facts contain any reference to

the record. Clearly, such a lack of meaningful response does not comply with Fed.

R. Civ. P. 56 or M.D.Pa. L.R. 56.1.[5] Accordingly, except for those paragraphs in

Burda's counter-statement of material facts that reference relevant portions of the

record in support of the averments contained therein, Burda will be deemed not to

oppose those statements of material fact submitted, and properly supported, by

defendants. *See Donohue v. Rineer*, Civ. A. No. 3:10-CV-1324, 2011 WL 3439174,

*1 n.2 (M.D. Pa. Aug. 5, 2011) (noting that "blanket denial" of a statement of

material facts that "fails to controvert it by a reference to the part of the record that

supports such a denial in accordance with Local Rule 56.1" are deemed admitted

under the Local Rule.).

---

[5] Rule 56(c) provides:

> **(c) Procedures**.
> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is
> genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions,
> > documents, electronically stored information, affidavits or declarations,
> > stipulations (including those made for purposes of the motion only),
> > admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of
> > a genuine dispute, or that an adverse party cannot produce admissible evidence
> > to support the fact.

Therefore, the numbered paragraphs in Doc. 39-1 which fail to properly respond to defendants' statement of material facts will not be considered.[6] Since statements of material fact not properly opposed are deemed admitted by Burda, striking these paragraphs is unnecessary. Accordingly, the motion to strike (Doc. 18) should be dismissed as moot.

Viewed in the light most favorable to plaintiff, the facts reveal the following background: Burda was formerly employed by the DOC at SCI-Coal Township as an electrical trade instructor. (Docs. 17, 39-1 ¶ 1). The DOC has several operational policies which relate, *inter alia*, to the safety of staff and inmates. (Doc. 17 ¶ 3).

Burda's employment records included a previous history of disciplinary actions for various infractions.[7] Burda was issued a letter on September 10, 2009 which informed him that he was suspended for 3 days, without pay. (*Id*. ¶ 65). The letter further notified Burda that the discipline was a final warning, and that further infractions could result in dismissal. (*Id*.). Thereafter, on September 14, 2009, a fact-finding investigation was held relating to possible violations of

---

[6] Specifically, the following paragraphs of Burda's counter-statement of material facts are non-responsive and/or failure to comply with the applicable Rules: ¶¶ 11, 17–89, 92–93, 95, 104, 108–111, 118–120, 125–126.

[7] The record is well-developed on Burda's disciplinary history, the detail of which, prior to September, 2009, need not be detailed herein.

Commonwealth and DOC policies regarding inappropriate, unprofessional and sexually explicit comments by Burda regarding another staff member (*Id*. ¶ 66). A memorandum of the investigation was prepared. (*Id*. ¶ 67). It noted that two of Burda's coworkers, Christopher Walczak and Joseph Redd, reported that Burda made inappropriate comments regarding a female coworker, Diane Daya. (*Id*. ¶ 68).

As a result of the investigation, further administrative action was recommended by the fact-finding committee. (*Id*. ¶ 69). A pre-disciplinary conference ("PDC") was held on October 9, 2009, at which time Daya testified that she felt sexually harassed by Burda and that she was uncomfortable because he stares at her. (*Id*. ¶¶ 72, 73). Burda denied making any derogatory comments about her. (*Id*. ¶ 75). In the opinion of the PDC panel, the charges against Burda for inappropriate comments and conduct were substantiated. (*Id*. ¶ 78). In light of Burda's past discipline, discharge was recommended. (*Id*. ¶¶ 78, 79). Burda was thereafter dismissed from his position by letter dated November 9, 2009. (*Id*. ¶ 82).

As a result of his termination, Burda filed a union grievance. (*Id*. ¶ 83). Pursuant to a settlement agreement, his termination was converted to a 5-day suspension without pay or benefits, and he was reinstated in February, 2010. (*Id*.).

On April 5, 2010, a fact-finding investigation was commenced regarding an allegation that Burda left an unfastened screw in the wall of the RHU, in violation

of security policy. (*Id*. ¶ 84). Officer Kitchen reported to Ellett and McMillan that he had observed Burda remove a screw with his finger from a light fixture, look at it, and push it back into place with one finger. (*Id*. ¶ 86). Kitchen then removed a 2 inch screw from the fixture, without tools, gave the screw to Lt. Faust and advised him of the incident. (*Id*. ¶ 87). Sgt. Kilmer testified at the fact-finding investigation that he heard Lt. Faust explain to Burda about the security and the screw but that Burda stated that "it was that way when [he] got there" and that "the inmates can't hurt us with screws." (*Id*. ¶ 89). Burda admitted at the fact-finding hearing that the screw was contraband and could be made into a weapon by an inmate. (*Id*. ¶ 91). The fact-finding committee concluded that Burda violated DOC policy and recommended further action. (*Id*. ¶ 93).

On April 22, 2010, a second fact-finding inquiry was held regarding Burda's possible violation of the tool control policy. (*Id*. ¶ 94). Lt. Freese testified that a quarterly tool inspection conducted in April, 2010 revealed that a level was missing from Burda's toolbox. (*Id*. ¶ 95). Burda testified that the level was in his inventory when he returned to work in February, 2010 and that, prior to the tool inspection, others had checked his tool cart and the level was there. (*Id*. ¶ 96). He further stated that someone must have put the level in the warehouse. (*Id*. ¶ 97). Disbelieving the

truthfulness of Burda's testimony, the fact-finding committee recommended further administrative action. (*Id*. ¶ 98).

On May 14, 2010, a PDC was held regarding the allegations that Burda violated security policy when leaving a loose screw in a light fixture. (*Id*. ¶ 99). Prior to the finalization of that PDC, another fact-finding investigation was initiated regarding Burda's alleged violation of security policy. (*Id*. ¶ 100). The fact-finding proceeding regarding the latest allegation was convened on May 25, 2010 and concerned a possible breach of loading dock procedures when Burda performed work on the loading dock with an inmate serving a life sentence. (*Id*. ¶ 101). Do to security and escape concerns, DOC policy mandates that inmates serving life sentences are not permitted to work on the loading dock. (*Id*. ¶ 102). A food service worker, Mr. Redd, observed Burda and the inmate changing light bulbs on the loading dock. (*Id*. ¶ 103). Redd knew the inmate from his previous assignment to kitchen duty and, upon discovering that the inmate was serving a life sentence, Redd notified Captain Morris. (*Id*. ¶ 104).

Burda testified that inmates serving life sentences were permitted to work on the loading dock with approval. (*Id*. ¶ 105). Burda further stated that the facility

maintenance manager, Mr. Johns, was on the loading dock at the time with the inmate serving a life sentence and told Burda it was okay. (*Id*. ¶ 106).[8]

Johns testified at the fact-finding hearing that he observed Burda on the loading dock while he (Johns) was in the boiler room. (*Id*. ¶ 107). Johns stated that he was not on the loading dock with Burda. (*Id*. ¶ 110). Johns denied approving Burda to take an inmate serving a life sentence to work on the loading dock.(*Id*. ¶ 108). Johns further denied knowledge of any maintenance management staff approving life inmates to work on the loading dock. (*Id*. ¶ 110). Johns himself has never approved any life inmates to work on the loading dock. (*Id*. ¶ 111).

Based on all the evidence, the fact-finding committee found that Burda had violated DOC policy and it recommended further administrative action. (*Id*. ¶ 113). Burda's PDC was reconvened on June 1, 2010 to include the latest violation of DOC security policy. (*Id*. ¶ 114). At the PDC, Burda stated that he was aware that he could not have inmates serving life sentences on the loading docks but that he received permission from a maintenance manager to do so. (*Id*. ¶ 115).[9]

---

[8] In his deposition, Burda stated that Johns allowed him to work with an inmate on the loading dock. Burda did not inform Johns that the inmate in question was one serving a life sentence. (Doc. 27, Ex. 9, p. 12–13 (deposition p. 69–70)).

[9] In his deposition testimony, Burda stated that he was aware, at the time, that the inmate working with him was serving a life sentence. (Doc. 27, Ex. 9, p. 13:10–12 (deposition p.

(continued...)

The PDC concluded that the charges that Burda violated the security policy by leaving a loose screw in a light fixture; failing to properly account for his assigned tools; and permitting a life inmate to work on the loading dock were all substantiated. (*Id*. ¶ 118). The PDC further noted Burda had been disciplined in the past on at least 4 occasions. (*Id*. ¶ 119). The PDC issued a report to the Superintendent of the results of its charges against Burda. (*Id*. ¶ 120). Opining that Burda completely disregarded policy and procedure and that his actions jeopardized the safety and security of inmates and staff, that Burda had been disciplined in the past and failed to correct his behavior, the Superintendent recommended that Burda be discharged. (*Id*. ¶¶ 121, 122, 123).

Burda was informed of his termination by letter dated June 23, 2010. (*Id*. ¶ 127). After filing a grievance, the termination was converted to resignation in lieu of discharge. (*Id*. ¶ 128). The present action followed.

## II. Issues Presented

Defendants contend as follows:

A.     Defendants are entitled to summary judgment on Burda's Title VII, ADEA and §1983 claims.

---

[9](...continued)
70:10–12)).

B.      Defendants are entitled to summary judgment on Burda's state law claims as they are barred by sovereign immunity.

### III. Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure states that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a).[10] A fact is material if its determination might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A dispute is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.*

Initially, the moving party bears the burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325.

---

[10] The language of Rule 56 was revised by amendment effective December 1, 2010. However, "[t]he standard for granting summary judgment remains unchanged," and "[t]he amendments will not affect continuing development of the decisional law construing and applying these phrases." Fed.R.Civ.P. 56 advisory committee's note to 2010 Amendments.

If the moving party carries this initial burden, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial" and do more than "simply show that there is some metaphysical doubt as to the material facts." *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal quotation marks omitted)). The nonmoving party cannot rely upon unsupported allegations in the pleadings. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Further, arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109–10 (3d Cir. 1985).

The court must view the facts in a light most favorable to the non-moving party, and the "existence of disputed issues of material fact should be ascertained by resolving 'all inferences, doubts and issues of credibility against the moving party.'" *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (quoting *Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972)). *See also Anderson*, 477 U.S. at 242. Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor can the court weigh the evidence. *Josey v. Hollingsworth Corp.*, 996 F.2d 632 (3d Cir. 1993);

*Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co.*, 998 F.2d 1224 (3d Cir. 1993).

At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 251–52. In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." *A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 794 (3d Cir. 2007).

## IV. Discussion

*(A) Gender discrimination (Count III)*

Burda contends that he was dismissed in September, 2009 for comments and conduct he directed to a female employee which purportedly violated DOC policy. However, this termination was the basis for Burda's grievance that resulted in his reinstatement. Thus, Burda argues, his successful grievance and reinstatement demonstrate that the basis of his initial termination were unsubstantiated. Moreover, he contends that the use of the allegations upon which his initial termination was based as evidence in the second disciplinary proceeding violated his 14th Amendment due process rights, constitutes double jeopardy and res

judicata, and that the defendants are collaterally estopped from referencing such allegations.

Title VII prohibits discrimination against an individual on the basis of that individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000(e)-2. Although age is not a proscribed basis for discrimination under Title VII, the ADEA prohibits discrimination on the basis of an individual's age and it mirrors Title VII in its substantive provisions. *See e.g.*, *Ahlmeyer v. Nevada System of High Ed.*, 555 F.3d 1051, 1058 (9th Cir. 2009) ("Title VII of the Civil Rights Act of 1964 provides an avenue for plaintiffs to assert claims for employment discrimination based on 'race, color, religion, sex or national origin ... In its substantive provisions, the ADEA mirrors Title VII....").

In the absence of direct evidence of discrimination, cases such as this are examined under the evidentiary framework first set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). A plaintiff must establish a prima facie case of discrimination. If the plaintiff meets this burden, then the burden shifts to the employer to establish legitimate non-discriminatory reasons for the employment action. If defendant meets this burden, the burden shifts back to the plaintiff to demonstrate that defendant's reason for not hiring him was pretextual and the real reason was invidious discrimination.

"If the employer offers evidence of a legitimate, non-discriminatory reason for the adverse employment decision, the plaintiff must produce evidence 'from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" *Potoski v. Wilkes University*, 692 F. Supp. 2d 475, 484 (M.D. Pa. 2010) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994); *Showalter v. Univ. of Pittsburgh Medical Center*, 190 F.3d 231, 235 (3d Cir. 1999); *Keller v. Orix Credit*, 130 F.3d 1101, 1108 (3d. Cir. 1997). "To discredit the employer's proffered reason, the plaintiff cannot simply show that the employer's decision was wrong or mistaken . . . Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them 'unworthy of credence.'" *Fuentes*, 32 F.3d at 765 (citation omitted). The court must then determine whether the plaintiff's evidence is sufficient "to permit a reasonable fact finder to conclude that the [employer's] reasons are incredible[.]" *Sheridan v. E.I. DuPont De Nemours & Co.*, 100 F.3d 1061, 1072 (3d Cir. 1996).

To show that discrimination was more likely than not a cause for the employer's action (the second method of proving pretext), "the plaintiff must point to evidence with sufficient probative force that a factfinder could conclude by a preponderance of the evidence that" the plaintiff's protected classification "was a motivating or determinative factor in the employment decision." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.,* 142 F.3d 639, 644 (3d Cir.1998). Among other things, the plaintiff may show that the employer: (1) has previously discriminated against him; (2) has discriminated against other persons within the plaintiff's protected class or within another protected class; or (3) that the employer has treated more favorably similarly situated persons not within the protected class. *Id*. at 645 (citing *Fuentes*). The burden of proving pretext is a difficult one. *Fuentes*, 32 F.3d at 765.

In a reverse discrimination cases such as the present claim, when a male sues for gender discrimination, the burden is initially on the plaintiff to establish a prima facie case. In order to meet his burden the plaintiff must "present sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected under Title VII." *Iadimarco v. Runyon*, 190 F.3d 151, 161, 163 (3d Cir.1999).

Burda's arguments with respect to gender discrimination lack merit. Burda fails to demonstrate how he was treated less favorably than female employees. He has produced no evidence demonstrating, or even hinting at the fact, that defendants treated him less favorably because of gender.

Burda's additional argument that use of evidence from his initial disciplinary hearing in his subsequent hearing violates his 14th Amendment due process rights is wholly without merit. He contends that since he was reinstated, the charges forming his initial termination must be considered "unsubstantiated." This is a specious argument. Although Burda was reinstated, he was disciplined for the incident by imposition of a 5-day suspension without pay or benefits. (*See* Doc. 22-1, Ex. W, p. 20). He also received a final warning for his action and was directed to attend sensitivity training and other courses deemed appropriate. *Id*. The fact that the ADR process stemming from his grievance resulted in lesser discipline neither exonerates him of the charges nor demonstrates that the charges were unsubstantiated.

Additionally, the use of evidence submitted at his first hearing in his subsequent disciplinary proceedings does not constitute double jeopardy, as that applies only to criminal matters. *See Hudson v. United States*, 522 U.S. 93, 98–99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (the Double Jeopardy Clause of the Fifth

Amendment protects people from, among other things, multiple *criminal* punishments for the same offense.). Principles of collateral estoppel, which bars the redetermination of an issue previously litigated, and res judicata, which bars relitigation of the same cause of action principles, are also inapplicable to the present matter because the prior decision must have been a valid and final judgment made by a court of competent jurisdiction. "A fundamental precept . . . embodied in the[se] related doctrines . . . is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies[.]" *Arlington Industries, Inc. v. Bridgeport Fittings, Inc.*, 692 F. Supp.2d 487, 500 (M.D. Pa. 2010) (quoting *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). The disciplinary hearings were not conducted by "a court of competent jurisdiction." Inasmuch as Burda has failed to show any objective evidence that males were treated less favorably than females in the fact-finding and the PDC process, or in any other circumstance(s), a claim for reverse discrimination has not been shown.

Accordingly, Burda has failed to show the establish a prima facie case of gender discrimination. Assuming, *arguendo*, that a prima facie case had been put forth, the burden would shift to defendants to articulate a legitimate, non-

discriminatory reason for their actions. Defendants assert that Burda violated DOC policy and its Code of Ethics on numerous occasions, including making inappropriate comments regarding coworkers, misplacing tools and failure to follow DOC procedures. This resulted in disciplinary action and, ultimately, dismissal. Accordingly, the burden shift back to Burda to establish pretext. *See e.g.*, *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 n.2 (3d Cir.1997) (noting that the defendant's burden at this stage is relatively light and that it is satisfied if the defendant articulates a legitimate reason for the adverse employment action).

Burda has put forth no evidence upon which a fact-finder could either disbelieve the defendants' articulated reasons for his discipline and dismissal or believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the defendants' action. As noted above, it is insufficient for a plaintiff to demonstrate that the employer's decision was wrong or mistaken (which Burda has not done) but instead he must demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's reasoning to allow a reasonable fact finder to conclude those reasons are unworthy of credence. *Fuentes, supra.* No such showing has been made. He has failed to identify similarly-situated female employees who violated DOC policy and its Code of Ethics who were not disciplined and/or dismissed.

Accordingly, having failed to also establish that defendants' reasons for terminating him are pretextual for discrimination, Burda has failed to establish a claim for gender discrimination. Defendants are therefore entitled to summary judgment on Count III.[11]

*(B) Age discrimination (Count IV)*

Burda also asserts an age discrimination claim, asserting he was terminated and replaced with someone younger. With respect to an allegation of age discrimination, under the *McDonnell Douglas* framework:

> the plaintiff bears the burden of proof and the initial burden of production, having to demonstrate a prima facie case of discrimination by showing first, that the plaintiff is forty years of age or older; second, that the defendant took an adverse employment action against the plaintiff; third, that the plaintiff was qualified for the position in question; and fourth, that the plaintiff was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus.[12] Once the plaintiff satisfies these elements, the burden of production shifts to the employer to identify a legitimate non-discriminatory reason for the adverse employment

---

[11] The individual defendants are also entitled to summary judgment on Count III inasmuch as the Third Circuit Court of Appeals has ruled that Title VII does not provide for individual liability. *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 184 (3d Cir.1997).

[12] The fourth element of a prima facie case of age discrimination may also be shown by establishing more favorable treatment of similarly-situated individuals outside the protected class. *Johnson v. Delaware County Juvenile Detention Center*, No. 11-1166, 2012 WL 895507, * 6 (E.D. Pa. March 16, 2012). *See also Fallon v. Meissner*, 66 F. App'x. 348, 351 (3d Cir.2003) (fourth element may be shown by evidence that "that younger employees received comparatively more favorable treatment.").

action. If the employer does so, the burden of production returns to the plaintiff to demonstrate that the employer's proffered rationale was a pretext for age discrimination. At all times, however, the burden of persuasion rests with the plaintiff.

*Smith v. City of Allentown*, 589 F.3d 684, 689-90 (3d Cir. 2009).

The undisputed factual averments demonstrate that Burda meets the first element of a prima facie case of age discrimination, *to wit*, that he is within the protected class, having been born in 1963. He also satisfies the second element, having been terminated from his position.[13] He was, presumably, qualified for the position that he held prior to his termination. As to the fourth element, Burda contends that he was replaced by an individual who was younger. Defendants do not dispute this averment.[14] The briefs do not state the age difference between Burda and his replacement however, for purposes of summary judgment, it will be assumed that the person hired to replace Burda was sufficiently younger. *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir. 1995) (as little as a five year age differential may suffice to raise an inference of age discrimination). *But see Hicks v. Tech Induistries,* 512 F. Supp.2d 338, 347 (W.D. Pa. 2007) ("Although

---

[13] As noted above, as a result of a grievance filed by Burda, the termination was converted to a resignation in lieu of discharge. For purposes of summary judgment, this constitutes sufficient adverse action.

[14] It is unclear where, in the record, the age of Burda's replacement is identified or referenced.

there is no bright-line rule as to what constitutes a 'sufficient' age difference, [a] two-year difference alone is simply too insignificant to raise a reasonable inference of age discrimination."); *see, e.g., Bernard v. Bethenergy Mines, Inc.*, 837 F. Supp. 714, 717 (W.D. Pa.1993) (seven-year and four-year age difference insufficient to show age discrimination); *aff'd*, 31 F.3d 1170 (3d Cir.1994); *see also Narin v. Lower Merion Sch. Dist.*, 206 F.3d 323, 333 n. 9 (3d Cir.2000) (age difference between 55-year-old employee and 49-year-old and 54-year-old replacements was insufficient to establish discrimination).

As Burda has established a prima facie case of age discrimination, the burden shifts to the defendants to articulate a legitimate non-discriminatory reason for the adverse action. Defendants contend that Burda was disciplined and dismissed from employment for violations of DOC policy and its Code of Ethics. Accordingly, having put forth a legitimate non-discriminatory reason for its action, the burden shifts back to Burda to establish that the proffered reason was pretextual for age discrimination.

To establish pretext, the plaintiff must establish by a preponderance of the evidence that age discrimination was the "but-for" cause of the challenged adverse employment action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 129 S.Ct. 2343, 2351 (2009). *See Henry v. Northern Westmoreland Career & Tech,* No. , 2011 WL

1136792, * 9 (W.D. Pa. March 25, 2011); *Akin v. York County Prison*, No. 1:09-CV-2484, 2010 WL 2342502, *6 n.4 (M.D. Pa. June 8, 2010) (observing that "[i]n *Smith*, the Third Circuit reaffirmed that the familiar *McDonnell Douglas* burden shifting framework applies in ADEA cases despite the Supreme Court's skepticism expressed in *Gross*"); *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1095 n. 4 (3d Cir.1995) ("Throughout this burden-shifting exercise, the burden of persuasion, 'including the burden of proving 'but for' causation or causation in fact, remains on the employee.'" (citing *Tex. Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981)). Although the prima facie inquiry need not adhere to a rigid formula, a plaintiff cannot shift the burden of production to the defendant simply by expressing a subjective belief that the challenged employment action was motivated by his or her age. *Wilson v. Blockbuster, Inc.*, 571 F. Supp. 2d 641, 647 (E.D. Pa. 2008).

In this matter, Burda has pointed to no evidence demonstrating that his age was a motivating factor in his discipline or termination. He has failed to identify younger workers who violated DOC policy and its Code of Ethics by making inappropriate comments and engaging in improper conduct, who were missing tools, and who permitted life inmates to work on the loading dock, who were not subjected to discipline. In short, Burda has based his age claim solely on the fact

that he was replaced by a someone younger. This is insufficient to establish pretext.

*See Birkbeck v. Marvel Lighting*, 30 F.3d 507, 512 (4th Cir.1994) ("[R]eplacement

by a younger employee is not dispositive of age discrimination. If it were, it would

transform the ADEA into something akin to a strict seniority protection system.").

Accordingly, summary judgment in favor of the defendants is warranted on Count

IV.[15]

*(C) Retaliation (Count V)*[16]

Burda also brings a retaliation claims, asserting that the defendants retaliated

against him, based on his age and his gender, for engaging in protected activity.

Title VII and the ADEA protect employees who attempt to exercise the rights

---

[15] Because Title VII and the ADEA have been construed in a similar fashion, all of Pennsylvania's U.S. District Courts have determined that, like Title VII, individual liability does not exist under the ADEA. *See Heinz v. Belcan Engineering Corp.*, No. 95-CV-0615, 1995 WL 606789 (W.D. Pa. Aug. 16, 1995); *Pierce v. Phila. Housing Auth.*, No. 94-CV-4180, 1995 WL 447614 (E.D. Pa. Jul. 26, 1995); *Perepchuk v. Friendly's Ice Cream Corp.*, No. 97-CV-1988, 2000 WL 1372876, at *4 (M.D. Pa. Mar. 28, 2000)

[16] The caption to Count V of the complaint references Title VII and ADEA retaliation, but paragraph 62 specifically asserts that the defendants discriminated and retaliated against plaintiff due to his gender and age in violation of PHRA.

guaranteed by the Act against retaliation by employers. 42 U.S.C. § 2000e–3(a); 29 U.S.C. § 623(d). "Like its federal counterparts, the PHRA makes unlawful gender and age-based discriminatory termination and harassment, and retaliation." *Slater v. Susquehanna County*, 613 F. Supp. 2d 653, 669 (M.D.Pa. 2009). *See generally* 43 Pa. Cons.Stat. § 955.

To establish a prima facie case of retaliation, a plaintiff must show that: (1) he or she engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the protected activity; and (3) a causal link exists between the protected activity and the adverse action. *Weston* v. Pa., 251 F.3d 420, 430 (3d Cir. 2001), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)). Activities protected from retaliation include opposing any practice made unlawful by Title VII or the ADEA; making a charge of employment discrimination; or testifying, assisting or participating in any manner in an investigation, proceeding or hearing under Title VII or the ADEA. *See* 42 U.S.C. § 2000e–3(a). A plaintiff may establish the requisite causal link between the protected activity and the retaliatory act by, for example, showing "temporal proximity" or a pattern of ongoing antagonism sufficient to give rise to

an inference of retaliation. *Jensen v. Potter*, 435 F.3d 444, 450 (3d Cir. 2006); *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280–81 (3d Cir.2000).

The first two elements of a retaliation claim are established—Burda engaged in protected activity by filing a grievance and he was subsequently disciplined, and ultimately terminated. The parties dispute whether a causal link between the two has been established.

Burda asserts he was disciplined and terminated not for violating DOC guidelines and its Code of Ethics but for filing a union grievance. Although the date of his grievance is not readily apparent, it occurred sometime between his November, 2009 termination and his February, 2010 reinstatement. His subsequent dismissal in June, 2010 lacks sufficient temporal proximity to alone be unduly suggestive of a retaliatory motive based on Burda's age or gender. In fact, the only evidence Burda offers in support of this position is the fact that his termination after he filed a union grievance. This is insufficient to carry his burden of establishing a causal link between filing the grievance and being terminated. *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir.1997) ("[T]he mere fact that adverse employment action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events.") (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d

Cir.1997)). Consequently, Burda has not established a prima facie case of retaliation based on his age or his gender. Accordingly, it is recommended that summary judgment be entered in favor of defendants on Count V.

*(D) Hostile work environment (Count VI)*

The Court of Appeals for the Third Circuit has established five elements a plaintiff must establish to succeed on a hostile work environment claim:

(1)    the plaintiff suffered intentional discrimination because of his or her membership in the protected class;

(2)    the discrimination was pervasive [or severe];[17]

(3)    the discrimination detrimentally affected the plaintiff;

(4)    the discrimination would have detrimentally affected a reasonable person of the same protected class in that position; and,

(5)    the existence of respondeat superior liability.

*Shahin v. College Misericordia*, No. 3:CV-02-0925, 2006 WL 2642355, at *11

(M.D. Pa. Sept.13, 2006) (citing *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 753

---

[17] The Third Circuit had required that discriminatory harassment be "pervasive and regular." *See, e.g.*, *Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001); *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 753 (3d Cir.1995). In *Pennsylvania State Police v. Suders*, the Supreme Court of the United States made it clear that the harassment must be "sufficiently severe or persuasive to alter the conditions of [the complainant's] employment." 542 U.S. 129, 133-34 (2004); *see also Jensen v. Potter*, 435 F.3d 444, 449 n.3 (3d Cir. 2006).

(3d Cir. 1995)). A court should consider all the circumstances in determining whether an environment is hostile or abusive, including "the frequency of the discriminatory conduct; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993).

Courts must bear in mind that "Title VII is not 'a general civility code for the American workplace.'" *Jensen*, 435 at 449, *implied overruling on other grounds recognized by Moore v. City of Philadelphia*, 461 F.3d 331, 2006 WL 2492256, at *8–9 (3d Cir. 2006) (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80-81 (1998)). Title VII is not violated by "[m]ere utterance of an . . . epithet which engenders offensive feelings in an employee" or by mere "discourtesy or rudeness," unless so severe or pervasive as to constitute an objective change in the conditions of employment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citations omitted). Thus, "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious)" are not actionable under Title VII. *Id*. at 788. In examining a hostile work environment claim, a court should focus not on individual incidents, but rather, on the overall

situation to determine whether a plaintiff suffered intentional discrimination. *See Jensen, supra; Cardenas v. Massey*, 269 F.3d 251, 261–62 (3d Cir. 2001).

In support of his claim, Burda alleges the following incidents for which he was reprimanded and/or disciplined:

a.      tools removed from his toolbox on February 22, 2010;

b.      loose screw removed from light fixture on March 22, 2012;

c.      tools removed from his toolbox and placed in supervisor's cabinet on April 12, 2010; and

d.      having an inmate serving a life sentence to work on the loading dock on April 30, 2010.[18]

He contends that the defendants have not demonstrated that he is responsible for these occurrences. However, as part of the fact-finding and PDC process, Burda's responsibility for these DOC violations was, in fact, determined. Moreover, for purposes of summary judgment, the burden is not on the defendants to justify Burda's discipline and discharge. Rather, the law is well-settled that it is a plaintiff's burden to establish a claim for hostile work environment. Burda has not done this.[19]

---

[18] DOC Policy 6.3.1 9 provides that inmates serving life sentences are not permitted to perform work on the loading dock given the high security risk. (Doc. 17, ¶ 7).

[19] To the extent Burda feels there are unanswered questions regarding these incidents, he

(continued...)

Defendants have identified evidence indicating that Burda's claims regarding these occurrences are unsupported by the record. For example, there was testimony offered by Burda's coworker, Officer Kitchen, stating that he witnessed Burda remove the screw and then push it into the fixture. Kitchen reported this incident to Lt. Faust. As to the life inmate on the dock, Burda stated that he believed it was management's responsibility for knowing which inmates were permitted on the dock. Although he also stated that Burda acquiesced to the life inmate on the dock, Johns testified that he was unaware of that inmate being on the dock. Johns was specific in stating that, while he passed through the boiler room, he did not know that a life inmate was working on the dock.[20]

Defendants maintain that Burda has failed to establish a hostile work environment claim because the incidents he relies upon—that he was charged, investigated, disciplined and terminated—are attributable to his own behavior, not that of the defendants. Indeed, there is ample support in the record for Burda's disciplinary events. Burda has offered only his own unsubstantiated averments that

---

[19](...continued)
was afforded an opportunity at his PDC hearings to raise any issues he felt were relevant.

[20]  As Johns does not appear in the surveillance tape of the dock at the time in question, the surveillance tape is of no consequence. (*See* Doc. 29, Ex. 10; Docs. 42-2, 42-3). Even if he were in the surveillance video, it does not necessarily follow that he was aware of who was on the loading dock and/or whether any individuals were serving life sentences.

the defendants fabricated these charges in retaliation for his reinstatement. Not only has he failed to offer support for this naked allegation, but the evidence of record supports the determination that the Burda bears responsibility for these infractions.

Burda fails to meet any, let alone all, of the factors listed above to establish a claim for a hostile work environment. Accordingly, it is recommended that summary judgment be granted on Count VI.

*(E) State law claim (Count VIII)*

The complaint also brings a claim under the Pennsylvania Human Relations Act, 43 P.S. §§ 951–963, asserting that defendants discriminated against him and retaliated against him based on his age and his gender and that they created a hostile work environment. Defendants seek summary judgment on these claims, contending that the Commonwealth and its agencies are immune from such claims under 1 Pa.C.S.A. § 2310.[21] While Burda does not specifically address sovereign immunity, he maintains he has established his state law claims under the PHRA.

Pennsylvania law generally extends the doctrine of sovereign immunity to damage claims for state law torts against "the Commonwealth, and its officials and

---

[21] "Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa. C.S.A. § 2310.

employees acting within the scope of their duties." 1 Pa. C.S.A. § 2310. The statute

further provides that such parties "shall continue to enjoy sovereign immunity and

official immunity ... unless the General Assembly shall specifically waive

immunity," except for several narrow enumerated exceptions. 1 Pa. C.S.A § 2310;

*McGrath v. Johnson*, 67 F. Supp.2d 499, 511 (E.D. Pa.1999); *Tinson v.*

*Pennsylvania*, No. Civ. A. 93-3985, 1995 WL 581978, at *6 (E.D. Pa. October 2,

1995). The Pennsylvania General Assembly has waived sovereign immunity in

nine limited circumstances involving negligence. *See* 42 Pa. C.S.A. § 8522(b).[22]

State sovereign immunity includes both immunity from suit in federal court and

immunity from liability and that a State may waive one without waiving the other.

*Lombardo  v. Pennsylvania*, 540 F.3d 190, 193 (3d Cir. 2008). Sovereign immunity

extends to state agencies which are considered "arms of the state," as well as to

employees of such agencies. *Bowers v. National Collegiate Athletic Association*,

475 F.3d 524, 545–546 (3d Cir.2007). An entity is properly characterized as an arm

of the state when a judgment against it would have essentially the same practical

---

[22] The limited negligent categories where the Commonwealth has explicitly waived immunity are: 1) vehicle liability; 2) medical-professional liability; 3) care, custody, or control of personal property; 4) Commonwealth real estate, highways and sidewalks; 5) potholes and other dangerous conditions; 6) care, custody or control of animals; 7) liquor store sales; 8) National Guard activities; and 9) toxoids and vaccines. 42 Pa.C.S.A. § 8522(a),

consequences as a judgment against the state itself. *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir.1989) (internal citation omitted).

As to the PHRA claim, the Pennsylvania courts have ruled that the Commonwealth waived its sovereign immunity in that statute. *See Mansfield State College v. Kovich*, 46 Pa.Commw. 399, 407 A.2d 1387, 1388 (Pa.Commw. Ct.1979) (holding that the statute's definition of "employer" subject to the act includes the Commonwealth). For this reason, the Defendants are not immune from liability under Pennsylvania law for actions taken in violation of the PHRA's anti-discrimination and anti-retaliation provisions. *Mitchell v. Miller*, --- F. Supp.2d ----, 2012 WL 3204476, *31 (W.D. Pa. Aug. 3, 2012).

Although not addressed by the parties, immunity under the Eleventh Amendment is applicable herein. The Amendment states:

> The Judicial power of the United States shall not be construed to
> extend to any suit in law or equity, commenced or prosecuted against
> one of the United States by Citizens of another State, or by Citizens or
> Subjects of any Foreign State.

U.S. Const. amend. XI. The Eleventh Amendment precludes private federal litigation against a state and its agencies. *Hans v. Louisiana*, 134 U.S. 1, 15–16 (1890); *see also Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72–73 (2000); *Lombardo*, 540 F.3d at 194–95. Generally, Eleventh Amendment immunity also

extends to state officials sued in their official capacity because in such a case the state is the real party in interest. *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir.1990). Only two exceptions apply where an individual may sue a state. First, Congress may authorize such a suit to enforce the Fourteenth Amendment. *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976). Second, a state may waive its sovereign immunity by consenting to suit. *Clark v. Barnard*, 108 U.S. 436, 447-48 (1883).

It is well-settled that the Eleventh Amendment bars suits against states and state agencies alleging claims brought under the PHRA. *See Patterson v. Pennsylvania Office of Inspector General*, 243 F. App'x. 695, 696 (3d Cir.2007). The Department of Corrections is an arm of the state and thus immune to suit under he Eleventh Amendment. *See O'Donnell v. Pennsylvania Dept. of Corrections*, 790 F. Supp.2d 289, 297 n.8 (M.D. Pa 2011); *Lavia v. Pennsylvania*, 224 F.3d 190, 194 (3d Cir.2000). This immunity extends to the individual defendants, as employees of the DOC, to the extent they are sued in their official capacities. *Seminole Tribe v. Florida*, 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).

Furthermore, although the Eleventh Amendment does not immunize the individual defendants acting in their individual capacities from liability, "individuals are not liable in their individual capacities under ... the PHRA." *Chatterjee v. Sch. Dist. of Phila.*, 170 F. Supp.2d 509, 515–16 (E.D. Pa.2001). *See*

*also O'Donnell*, *supra* at 308 (noting that the law is well-established in the Third Circuit that parties cannot be held liable in their individual capacities . . . under the PHRA.); *Walter v. Cumberland Valley Sch. Dist.*, No. 4:08–CV–1586, 2010 WL 2404367, at *5, 2010 U.S. Dist. LEXIS 57177, at *20 (M.D. Pa. June 10, 2010) (observing that no liability exists under, *inter alia*, the PHRA).

Accordingly, it is recommended summary judgment in favor of the defendants be granted as to Count VIII.

*(F) §§1981 and 1983 claims*

Although the complaint brings a claim pursuant to 42 U.S.C. §1981, inasmuch as that statutory provision addresses racial discrimination, it is inapplicable to the present matter. *See Schultz v. Wilson*, 304 F. App'x 116, 119 (3d Cir. 2008) ("Section 1981 prohibits racial discrimination in the making and enforcement of contracts and property transactions. 42 U.S.C. § 1981."). Burda's brief in opposition to the motion for summary judgment does not address the applicability of §1981. Accordingly, Burda has not only failed to support this claim but defendants' movement for summary judgment on it is deemed unopposed. Inasmuch as §1981 prohibits racial discrimination in making and enforcing contracts, having failed to allege a claim for discrimination based on his race, Burda in unable to establish a claim under §1981. *See Saint Francis College v.*

*Al-Khazraji*, 481 U.S. 604, 609–10 (1987). Thus, to the extent Count I brings a claim pursuant to §1981, summary judgment in favor of the defendants is appropriate.

Burda also brings a claim pursuant to 42 U.S.C. § 1983, which provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

*Id.* Section 1983 imposes civil liability upon any person who, under color of state law, deprives someone of the rights, privileges, or immunities secured by the federal Constitution or the laws of the United States. *Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir. 2000). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).

Burda asserts three claims: (1) a 1st Amendment retaliation claim for exercising his rights by filing a grievance; (2) violation of his due process rights under the 14th Amendment when defendants used evidence from the hearing in his first termination, which was subsequently reversed, in his second termination

hearing which, he maintains, constitutes double jeopardy; and (3) that the defendants violated his 4th Amendment rights when they took tools from his toolbox and disciplined him for losing and/or misplacing his tools. Burda's claims are without merit.

*(1) 1st Amendment claim*

To establish a retaliation claim under § 1983 predicated on the First Amendment, a plaintiff must show "(1) that they engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir.2007). A defendant may still prevail by "showing that it would have taken the same action even if the plaintiff had not engaged in the protected activity." *Id*. This means that, to prevail on a First Amendment claim, "an employee must prove that the conduct at issue was constitutionally protected, and that it was a substantial or motivating factor in the termination." *Bd. of County Comm'rs v. Umbehr*, 518 U.S. 668, 675 (1996); *see also Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir.2009). While the first factor is a question of law, the second inquiry is a question of fact." *Id*. (internal quotation marks omitted). If these "elements are satisfied, the burden shifts to the defendants

to demonstrate that the same action would occur if the [protected activity] had not occurred." *Id.*

The parties do not dispute the first two factors, *to wit.*, that Burda engaged in protected conduct by filing a grievance and that he was terminated from his position, which may deter a person of ordinary firmness from exercising his rights. *See Weston v. Pa.*, 251 F.3d 420, 430 (3d Cir.2001). The parties dispute whether Burda has established the requisite causal connection between his protected activity and his termination.

"[T]he mere fact that adverse employment action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events." *Krouse, supra* at 503 (quoting *Robinson, supra*). To establish the requisite causal connection, this court has observed:

> To establish the causation element of a retaliation claim, a plaintiff must prove that his or her participation in a protected activity motivated the defendant to perform the retaliatory act. *Ambrose v. Twp. of Robinson*, 303 F.3d 488, 493 (3d Cir.2002); *Meenan v. Harrison*, Civ. A. No. 3:03–CV–1300, 2006 WL 1000032, at *4 (M.D. Pa. Apr.13, 2006) (observing that a plaintiff must demonstrate that the exercise of First Amendment rights "played some substantial role" in the defendant's action). The temporal proximity of a retaliatory act to a plaintiff's exercise of his or her First Amendment rights is probative, but not dispositive, of the causation element. *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir.2003); *see also Kachmar v. Sungard Data Sys., Inc.*, 109 F.3d 173, 178 (3d Cir.1997) (stating that "temporal proximity merely provides an evidentiary basis from which

an inference can be drawn"). For temporal proximity alone to establish causation, the "timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." *Marasco*, 318 F.3d at 512 (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir.1997)) ... [T]he Third Circuit Court of Appeals has suggested that a temporal proximity of two days is sufficient to establish causation, *see Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 & n. 5 (3d Cir.2000), whereas a temporal proximity of ten days is sufficient to establish causation only when accompanied by other evidence of ... wrongdoing, *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir.2003). This suggests that the temporal proximity must be measured in days, rather than in weeks or months, to suggest causation without corroborative evidence.

*Conklin v. Warrington Twp.*, No. 06–2245, 2009 WL 1227950, *3 (M.D. Pa. April 30, 2009).

In the present matter, Burda filed his union grievance before his February 8, 2010 reinstatement.[23] He was discharged from employment on June 23, 2010. Accordingly, there is a span of at least four (4) months which, without more, is not unduly suggestive of a retaliatory motive and cannot, by itself, establish a causal link. Burda has submitted no other evidence, nor made any additional argument, in support of this third factor. Consequently, he has failed to establish a 1st Amendment retaliation claim.

---

[23] The exact date that the grievance was filed does not readily appear in the voluminous record submitted in this matter.

Moreover, even if such a claim had been establish, defendants contend they would have taken the same action, regardless of the exercise of his 1st Amendment rights because they had independent grounds to terminate Burda, *to wit.*, violating DOC policies and its Code of Ethics. Based on the record, Burda is unable to establish that his protected conduct was a substantial or motivating factor in the termination. Consequently, it is recommended that summary judgment be entered in favor of defendants on this claim.

*(2) 14th Amendment*

Although he alleges that use of evidence from his first termination hearing at the subsequent hearing violated due process under the 14th Amendment and constitutes double jeopardy, such an argument lacks support.[24] "To state a claim under [section] 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived on an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d. Cir.2006). The two "essential requirements" of due process are notice and an opportunity to respond. *Gniotek v.*

---

[24] As noted above, double jeopardy applies exclusively to criminal proceedings and is thus inapplicable to this matter.

*Philadelphia*, 808 F.2d 241, 244 (3d Cir.1986). In the present matter, Burda has not presented evidence, or even asserted, that he was not provided notice or an opportunity to respond to the charges against him at any of his disciplinary hearings. His claim that evidence at one disciplinary hearing may not be used in a subsequent hearing is wholly unsupported.

Burda premises his argument on the fact that he was reinstated to his position. Notably, the charges upon which his dismissal was based were not withdrawn nor were the factual findings thereon overturned. He has not presented any evidence indicating he was vindicated. Although his grievance resulted in his reinstatement to his position, his termination was converted to a 5-day suspension, without pay or benefits. (*See* Doc. 22-1, Ex. W, p. 20). He was also issued a final warning and directed to attend sensitivity training and other courses deemed appropriate. *Id*. Moreover, the fact that the decision on his grievance noted that, along with his reinstatement, Burda was given a "5 day suspension with a final warning" suggests that his earlier disciplinary history remained relevant to any subsequent disciplinary action. *Id*. To assert that the disciplinary matters giving rise to his November, 2009 termination were withdrawn or the findings thereon vacated based on the fact that the ADR process resulted in reduced level of discipline is contrary to the evidence of record.

Accordingly, it is recommended that summary judgment be entered in favor of the defendants on this claim.

*(3) 4th Amendment*

Finally, as to his 4th Amendment claim regarding the missing tools, Burda has presented absolutely no evidence to support this claim. Therefore, Burda has failed to establish this claim as well. Consequently, summary judgment in favor of defendants is warranted on Count I.

Moreover, as noted above, the Eleventh Amendment bars suits against the Commonwealth and its subsidiary agencies. Similarly, a suit brought against an individual acting in his or her official capacity is deemed to be a suit against the state and, therefore, also is barred by the Eleventh Amendment. Thus, to the extent Burda brings claims against the DOC for First, Fourth and/or Fourteenth Amendment violations pursuant to §1983, such claims are barred. *O'Donnell,* 790 F. Supp.2d at 297 (the Eleventh Amendment bars suits against non-consenting states and their subsidiary agencies for suits under 42 U.S.C. § 1983). *See also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (holding that states and their agencies are not persons under § 1983). Likewise, any such claims brought against the individual defendants in their official capacities are precluded. *See Hafer v. Melo*, 502 U.S. 21, 31, 112 S. Ct.

358, 116 L. Ed.2d 301 (1991). If Burda had established a claim under 1983, it could only be brought against the individual defendants in their individual capacities.

Having failed to establish a claim under §1983, it is recommended that summary judgment be entered in favor of defendants on Count I.   **V.**

**Recommendation**

Based on the foregoing, it is respectfully recommended that the motion to strike (Doc. 40) be dismissed as moot. Additionally, it is recommended that the motion for summary judgment (Doc. 18) be granted, and that all claims be dismissed.

Signed on January 4, 2013.

_____
**MILDRED E. METHVIN**
**U. S. MAGISTRATE JUDGE**